*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLEY GILEWSKI and ERIC GILEWSKI,

      Plaintiffs-Appellees,

v

CITY OF DETROIT,

      Defendant-Appellant,

and

WAYNE COUNTY,

      Defendant.

UNPUBLISHED
July 2, 2020

No. 347313
Wayne Circuit Court
LC No. 17-005154-NI

Before: MURRAY, C.J., and JANSEN and MARKEY, JJ.

PER CURIAM.

In this personal injury action involving the highway exception to the Governmental Tort Liability Act (GTLA), MCL 691.1402 *et seq.*, defendant, the City of Detroit (the City), appeals as of right the trial court's order denying defendant's motion for summary disposition. We affirm.

## I. FACTUAL BACKGROUND

On or around June 2, 2016, the Detroit Water and Sewage Department (DWSD) learned of a water main break in the area of 1380 East Jefferson Avenue (Jefferson Ave) in the City of Detroit. On June 3, 2016, Evergreen Civil (Evergreen), who had contracted with DWSD, repaired the water main break and completed temporary pavement restoration to the affected portion of Jefferson Ave. The pavement restoration covered an eight-foot by four-foot section of Jefferson Ave at Riopelle Street. Evergreen backfilled sand and stone into the excavated area of Jefferson Ave, and then applied cold patch asphalt to the roadway. DWSD construction inspector Ralph Greer oversaw Evergreen's work. When Evergreen left the construction site on June 3, 2016, the temporary pavement restoration was "up to grade." However, sometime between June 3, 2016 and June 18, 2016, the cold patch significantly settled below the surface of the roadway.

-1-

On June 18, 2016, plaintiffs Eric and Kimberly Gilewski, who are husband and wife, were riding motorized scooters with friends in Detroit. Plaintiffs met up with other members of a scooter club at 12 Mile Road and Gratiot Road, and then around 9:00 p.m., rode southbound on Gratiot into the city. As the group was finishing their ride, they stopped for gas at the Speedway gas station by Jefferson Avenue and I-75, then continued eastbound on Jefferson Ave in the right lane. Plaintiffs were sharing a lane, with Eric on the left, slightly ahead of Kimberly. Eric recalled that suddenly, Kimberly got "sucked into nothing. Like she went into an abyss of darkness." In reality, Kimberly's scooter hit the aforementioned sunken cold patch on Jefferson Ave, and she was thrown from the scooter and injured.

Plaintiffs filed a three-count complaint against the City alleging: (1) negligence; (2) negligent infliction of emotional distress upon Eric as a bystander; and (3) a violation of MCL 691.1402 *et seq*. Following oral and written discovery, the City moved for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that it was protected from liability by the GTLA, and that the highway exception did not apply, because it did not have actual or constructive notice of a defect, and that plaintiffs have failed to establish that the alleged defect made the highway not reasonably safe and convenient for public travel.

The trial court disagreed, and denied the City's motion for summary disposition reasoning that questions of fact remained regarding notice and whether the highway was reasonably safe and convenient for public travel. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(7). *Citizens Ins Co v Scholz*, 268 Mich App 659, 662; 709 NW2d 164 (2005). Summary disposition under MCR 2.116(C)(7) is appropriate where the moving party has immunity, *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999), such as the immunity provided by the GTLA.

Likewise, this Court

review[s] a trial court's decision regarding a motion for summary disposition de novo. *Lowrey v LMPS & LMPJ, Inc.*, 500 Mich 1, 5-6, 890 NW2d 344 (2016). A motion for summary disposition brought under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint," *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768, 887 NW2d 635 (2016), and should be granted when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law," *West v Gen Motors Corp*, 469 Mich 177, 183, 665 NW2d 468 (2003).

"The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693, 818 NW2d 410 (2012). The court must consider all of the admissible evidence in a light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29, 772 NW2d 801 (2009). However, the party opposing

summary disposition under MCR 2.116(C)(10) "may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Oliver v Smith*, 269 Mich App 560, 564, 715 NW2d 314 (2006) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*., 308 Mich App 420, 423, 864 NW2d 609 (2014) (quotation marks and citation omitted). [*Lockwood v Twp of Ellington*, 323 Mich App 392, 400-401; 917 NW2d 413 (2018).]

### III. ANALYSIS

The GTLA mandates that "except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). However, narrow statutory exceptions exist, including the highway exception found in MCL 691.1402(1). This exception specifically provides:

[E]ach governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. [MCL 691.1402(1).]

MCL 691.1403, however, limits the highway exception:

No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place. [MCL 691.1403.]

Indeed, "pursuant to MCL 691.1403, in order for immunity to be waived, the agency must have had actual or constructive notice of 'the defect' before the accident occurred." *Wilson v Alpena County Road Com'n*, 474 Mich 161, 168; 713 NW2d 717 (2006). Plaintiffs are therefore required to allege that the City "was on notice that the highway contained a defect rendering it not 'reasonably safe and convenient for public travel.' " *Id*. quoting MCL 691.1402(1).

The City argues that plaintiffs failed to establish that it had actual or constructive notice of the sunken cold patch. We agree that plaintiffs failed to present any evidence that would indicate the City had actual notice. However, we conclude that plaintiffs did establish a question of fact regarding whether the City had constructive notice of a defect that would render Jefferson Ave not reasonably safe and convenient for public travel.

The City does not dispute that its contract with Evergreen, submitted by plaintiffs in response to the City's motion for summary disposition, required Evergreen to backfill excavations with a suitable material in successive layers no more than nine inches deep. Evergreen was then required to compact those layers via mechanical tamping. Evergreen was also required to confirm that each layer was adequately compacted using the "control density method." The June 3, 2016 work order for repair of the water main and DWSD Inspector Ralph Greer's deposition testimony both indicate that Evergreen filled the entire excavation with sand and stone and then applied a cold patch. The record is devoid of any evidence regarding how the backfilled material was applied, either in layers or all at once, or whether it was tamped. However, Greer's deposition testimony is clear that Evergreen did not perform any density testing during this repair, which he personally oversaw. Over the next two weeks, the backfilled material clearly settled, causing the cold patch to sink well below the roadway, as evidenced by photographs of the affected roadway taken contemporaneously to Kimberly's accident.

Plaintiffs also submitted an expert report from James J. Valenta, PE, MSCE, FITE in support of their position. Based on his review of all case materials, including the June 3, 2016 work order, the contract between the City and Evergreen, and photographs of the sunken cold patch, Valenta offered the following opinion:

> The Evergreen contract clearly requires that the excavation backfill be performed in multiple lifts: each lift is to compacted to a minimal value of 95 percent of the optimal density and the optimal moisture content. The specific test is termed a Modified Standard Proctor Density Test. This test if used to determine whether the compaction of backfill materials has achieved at least a 95% density value for the specific material being used in the backfill operation. Evergreen performed no such quality testing, and Greer did not require Evergreen to comply with this critical element assuring quality control of the work. The aggregate density requirement specified in the DWSD contract is the same specification that the Michigan Department of Transportation requires of contractors hired to perform pavement restorations on state highways. When properly followed, these specifications do not result in settlement of the temporary pavement patch surface. As a result of not achieving the required compaction of the excavation, the backfill settled and the temporary utility patch settled and failed.

> * * *

> The lack of specified aggregate compaction resulted in settlement of the trench back-fill material to the point where the temporary street surface settled. The settlement exceeded 4 inches in depth and encountering the displacement was the proximate cause of [Kimberly] being dismounted from her vehicle.

Briefly, we note that for the first time on appeal, the City challenges the admissibility of Valenta's report. The City, though having ample opportunity both in the form of its reply brief and argument at the motion hearing, did not challenge Valenta's opinions, thus this issue is unpreserved. *Henderson v Dep't of Treasury*, 307 Mich App 1, 7-8; 858 NW2d 733 (2014). Because "[i]ssues raised for the first time on appeal are not ordinarily subject to review" and appellate courts have "repeatedly declined to consider arguments not presented at a lower level[,]"

we decline to address this issue. *Kemp v Farm Bureau General Ins Co of Mich*, 500 Mich 245, 254 n 26; 901 NW2d 534 (2017), quoting *Booth Newspapers, Inc v Mich Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993). Indeed, the City will still have the opportunity to properly address this issue in the trial court via a timely motion in limine.

In *Peters v State*, 400 Mich 50; 252 NW2d 799 (1977), our Supreme Court reiterated that

A person is chargeable with constructive notice where, having the means of knowledge, he does not use them. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would have readily ascertained. [*Peters*, 400 Mich at 60 (quotation marks and citation omitted).]

The *Peters* Court went on to conclude that if the State knew, or should have known, of the defective notice of the defect at issue (a drainage system), then that would be sufficient notice to attach liability even in the absence of "knowledge of flooding at the specific site of the accident" in that case. *Id*. at 59. Further, the Court concluded that "knowledge on the part of the agency contractually obligated to maintain the highway for the State would be imputed to the State." *Id*. at 59-60.

We conclude that the record in this case is sufficient to create a question of fact as to whether the City knew or should have known that the water main repair work was faulty, and resulted in a defect that made Jefferson Ave not reasonably safe or convenient for public travel. Evergreen knew of its contractual responsibility to adequately compact the backfill materials as evidenced by the contract between the City and Evergreen. Greer testified that such testing was not performed on this job. Valenta's report indicates that if such testing had been performed, the settling would not have occurred, the cold patch would not have sunk, and Kimberly's injuries would have been prevented. On the basis of the foregoing, the trial court did not err by concluding that question of fact remained regarding whether the City had notice as required under MCL 691.1402(1).

The City also argues that the trial court erred in concluding that a question of fact remained regarding whether the sunken cold patch created a defect that rendered Jefferson Ave not reasonably safe and convenient for public travel. We disagree.

As used in MCL 691.1403, a "defect" is defined as an "imperfection . . . which renders the highway 'not reasonably safe and convenient for public travel." *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 168; 713 NW2d 717 (2006), quoting MCL 691.1402(1). A "rough or uneven" road is not necessarily unsafe, particularly when other drivers are able to safely travel with careful driving. *Jones v Detroit*, 171 Mich 608, 611; 137 NW2d 513 (1912).

The June 3, 2016 work order shows that the area of Jefferson Ave that was excavated to repair the broken water main measured eight-feet by four-feet. By any account, a cold patch of this size takes up a significant portion of a lane of travel. The photographs of the sunken cold patch submitted by plaintiff show a package of cigarettes, standing upright in the sunken cold

patch. Even an untrained eye can see that in the roughly two-week period following the repair of the water main, the cold patch used in the temporary resurfacing of Jefferson Ave had sunk down below the roadway at least as far as the cigarette package was tall; approximately four or more inches.

The section of Jefferson Ave where Kimberly was injured was not merely a "rough or uneven" section of the road. A four-inch difference in elevation is significant. As our Supreme Court announced in *Kozak v City of Lincoln Park*, 499 Mich 465, 468; 885 NW2d 443 (2016), based on the "photographic proof of a significant gap of elevation between" the roadway and the cold patch, "a reasonable jury could conclude that the highway was not in a state of reasonable repair so that it was reasonably safe and convenient for public travel." Thus, we conclude that the trial court correctly found a question of material fact regarding this issue remained.

Where questions of fact remained regarding notice and whether a defect rendered the affected portion of Jefferson Ave not reasonably safe and convenient for public travel, the trial court did not err by denying the City's motion for summary disposition.

Affirmed.

/s/ Kathleen Jansen
/s/ Jane E. Markey